EXHIBIT
D

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

| | |
|---|---|
| AMANDA GARAVAGLIA, et al. ) | |
| ) | Case No.: 2316-CV26217 |
| Plaintiffs, ) | |
| ) | Division: 14 |
| v. ) | |
| BRAZILIAN PROFESSIONALS, LLC, et) | |
| al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**FIRST AMENDED PETITION**

COME NOW Plaintiffs and for their claims and causes of action against the Defendants, upon information and belief, states:

**PARTIES**

1.      Plaintiff Amanda Garavaglia is a former resident of Missouri and currently resides in Stillwell, Kansas.

2.      Plaintiff John Garavaglia is a former resident of Missouri and currently resides in Stillwell, Kansas. He is the spouse of Plaintiff Amanda Garavaglia and brings claims against all Defendants for loss of consortium damages.

3.      Plaintiffs Kirk and Megan Matson are the legal guardians of M.M., a minor child, and currently reside in Overland Park, Kansas.

4.      As legal guardians of M.M., Kirk and Megan Matson are the proper parties to serve as the Next Friends to pursue claims against the above-named Defendants.

5.     Defendant GIB, LLC doing business as "Brazilian Blowout," is a foreign limited liability company organized and existing under the laws of the State of California, having its principal place of business at 6855 Tujunga Avenue, North Hollywood, CA 91605.

6.     Defendant Brazilian Professionals, LLC is a foreign limited liability company organized and existing under the laws of Florida, having is principal place of business at 28001 Dorothy Drive, Agoura Hills, CA 91301.

7.     Defendant Brazilian Professionals and Defendant GIB, LLC are referred to collectively throughout as "Defendant Brazilian Blowout."

8.     Defendant Brazilian Blowout manufactures, designs, advertises, promotes, and sells hair straightening products, including Brazilian Blowout Solution and Brazilian Blowout Acai Professional Smoothing Solution.

9.     Defendant SSG, LLC doing business as "Salon Service Group" is a Missouri limited liability company with its principal place of business in Springfield, Missouri.  It is a citizen of Missouri and can be served through its registered agent at the address listed in the caption. Defendant SSG, LLC is referred to throughout as "Defendant SSG."

10.     Defendant SSG distributes, advertises, promotes, and sells, hair straightening products, including Brazilian Blowout Solution and Brazilian Blowout Acai Professional Smoothing Solution.

11.     In addition, and independent from Defendant SSG's role as a product seller and distributor, Defendant SSG provides education, training and certification on hair

straightening products, including Brazilian Blowout Solution and Brazilian Blowout Acai Professional Smoothing Solution.

**AGENCY**

12.     At all relevant times, Defendants were acting by and through their actual and/or ostensible employees and agents. Whenever reference in this Petition is made to any act or transaction by Defendants such allegation shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of such Defendants committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of such Defendants while actively engaged in the scope of their duties.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over Defendant SSG in that it is a resident and citizen of the State of Missouri.

14.     This Court has jurisdiction over Defendant Brazilian Blowout pursuant to Mo. Rev. Stat. §506.500 in that it transacted business, contracted, and/or committed tortious acts within the State of Missouri from which Plaintiffs' claims arise, regularly conducts business within this state, contracts, sells, markets, distributes and provides training on its products with Missouri companies, including Defendant SSG, and encourages Missouri businesses to buy its products. Further, Defendant Brazilian Blowout has substantial, systematic, and continuous contact with the State of Missouri such that the exercise of general personal jurisdiction over Defendant is fair, just and appropriate.

15.     Venue is proper in this Court pursuant to R.S.Mo § 508.010.5(1) because Plaintiff Amanda Garavaglia was first "injured" outside Missouri and her principal place

3

of residence was in Jackson County Missouri on the date she was first "injured." Under R.S.Mo § 508.010.14, "A plaintiff is considered first injured where the trauma or exposure occurred rather than where symptoms are first manifested."

<b><u>TOLLING</u></b>

16.     Defendants' fraudulent concealment and/or improper acts as alleged herein prevented Plaintiffs from ascertaining latent injuries. Therefore, any applicable statute of limitations has been tolled.

17.     Plaintiffs did not sustain substantial injury, or the fact of injury was not capable of ascertainment until well after exposure. Therefore, any applicable statute of limitations has been tolled.

<b><u>ALLEGATIONS COMMON TO ALL COUNTS</u></b>

18.     Defendant Brazilian Blowout manufactures, designs, markets, sells, advertises, and promotes hair straightening products including Brazilian Blowout Solution and Brazilian Blowout Acai Professional Smoothing Solution (collectedly "Brazilian Blowout products").

19.     Brazilian Blowout products and other similar straightening products are utilized to smooth and straighten hair and contain a range of carcinogens and endocrine disrupting compounds including formaldehyde, phthalates, parabens, cyclosiloxanes, and metals (collectively referred to as "hazardous chemicals").

20.     When used as directed, hairstylists apply the straightening solution to their client's hair, blow dry the hair, and then apply a heated flat iron to the hair. When the solution is heated, hazardous chemicals including formaldehyde are released into the air.

4

21.     Formaldehyde is classified as a human carcinogen by the International Agency for Research on Cancer (IARC), the National Toxicology Program, and the National Cancer Institute.

22.     Numerous studies have demonstrated that hairstylists and clients using hair straighteners are exposed to formaldehyde and other hazardous chemicals in concentrations that exceed the National Institute for Occupational Safety and Health (NIOSH), the Occupational Safety and Health Administration (OSHA) and the American Conference of Governmental Industrial Hygienist (ACGIH) thresholds levels.

23.     Studies have also demonstrated that exposure to hair straighteners, including Brazilian Blowout treatments, can cause severe health issues including, but not limited to, cancer, infertility and other reproductive health problems, respiratory problems, eye and skin irritation, allergic reactions, and damage to hair and scalp.

24.     Similarly, studies have shown that maternal exposure to hair straighteners during pregnancy and while breastfeeding can cause leukemia in children.

25.     By 2008, Defendant Brazilian Blowout was aware that its products specifically exposed users to formaldehyde and at levels far exceeding the recommended limits. An article in *Allure* magazine, based on FDA lab testing, found that Brazilian Blowout products contained formaldehyde well beyond the 0.2% threshold.[1]

---

[1] "Scared Straight," Allure Magazine, July 6, 2008.

26.     Despite being aware of the hazardous chemicals in its products, Defendant Brazilian Blowout falsely marketed its products as "formaldehyde-free" and safe, even though testing confirmed otherwise.

27.     In 2010, the Oregon Department of Consumer and Business Services (Oregon OSHA) conducted further testing that confirmed unacceptably high levels of formaldehyde in Brazilian Blowout products.[2] OSHA's report showed that hair stylists were exposed to dangerous levels of formaldehyde during the use of the products.

28.     Cal/OSHA conducted its own investigation and similarly found that Defendant Brazilian Blowout's products contained formaldehyde.[3]

29.     Despite these findings, Defendant Brazilian Blowout issued a public statement dismissing Oregon OSHA's results, claiming the testing was invalid and continued to falsely assert that its products were formaldehyde-free: "We stand behind the integrity of our product, and affirm that our professional solution is indeed formaldehyde-free."[4] "Because OSHA did not request a sample from the company directly, there is no reason to believe that the formulation tested and found positive for traces of formaldehyde was indeed Brazilian Blowout product. This represents a clear violation of proper testing protocol, and this gross negligence on the part of OSHA invalidates all findings that have been released as a result of OSHA's testing." *Id.*

---

[2] "'Keratin-Based' Hair Smooth Products And the Presence of Formaldehyde," Oregon OSHA and CROET, October 29, 2010.
[3] Occupational Safety and Health Administration, "Hair Salons: Facts about Formaldehyde in Hair Products – Government Response".
[4] September 30, 2010 "Statement from Brazilian Blowout to 'Good Morning America.'"; *see also* Brazilian Blowout September 29, 2010, Official Statement.

30. On October 5, 2010, Defendant Brazilian Blowout issued another statement, claiming that test results demonstrated its product was safe and that the level of formaldehyde found permitted use of the term "formaldehyde free."[5]

31. Following Oregon OSHA's findings, Health Canada also tested Brazilian Blowout products and discovered that the formaldehyde content was as high as 12%, far exceeding the 0.2% allowable limit. Health Canada issued a public warning about the risks posed by the product, specifically citing the dangers of aerosolized formaldehyde during use.[6]

32. In October 2010, Oregon OSHA published a comprehensive report confirming that Brazilian Blowout products contained significant levels of formaldehyde, even in bottles labeled as "formaldehyde-free."[7] The report concluded that "there are meaningful risks to salon workers when they are confronted with these hair smoothing products." *Id.* at p. 32.

33. Based on these findings, OSHA issued a hazard alert outlining the risks and precautions for salon workers and explaining that formaldehyde is a human carcinogen.[8]

---

[5] Brazilian Blowout October 5, 2010 Official Statement.
[6] Health Canada Advisory 2010-167, "Brazilian Blowout Solution Contains Formaldehyde," October 7, 2010.
[7] "Keratin-Based Hair Smoothing Products and the Presence of Formaldehyde," Oregon OSHA and CROET, October 29, 2010, p. 2.
[8] Oregon OSHA Hazard Alert: "Hair smoothing products and formaldehyde," OR-OSHA 2993 – 26 (10/10).

7

34.     Shortly afterward, a class action lawsuit was filed against Defendant Brazilian Blowout, alleging that the company had misled consumers by falsely claiming its products were safe and formaldehyde-free.[9]

35.     In November 2010, the California Attorney General sued Defendant Brazilian Blowout, alleging deceptive advertising and failure to warn consumers about the presence of a known carcinogen in its products.[10]

36.     In addition to the lawsuits, several government agencies issued reports that further undermined Brazilian Blowout's safety claims. In November 2010, Cal/OSHA released a fact sheet warning of the dangers of formaldehyde exposure from hair straightening products.[11]

37.     Following this, in April 2011, OSHA issued a hazard alert, specifically naming Brazilian Blowout as a product that could expose users to formaldehyde.[12]

38.     The Centers for Disease Control and Prevention's National Institute for Occupational Safety and Health (NIOSH) also weighed in. In May 2011, NIOSH released findings from short-term air quality tests, showing that six out of seven tests conducted during the use of Brazilian Blowout products exceeded NIOSH's exposure limits.[13] These

---

[9] Class Action Complaint in Case No. 2:10-cv-08452, filed November 5, 2010.
[10] Complaint for Injunctive Relief and Civil Penalty, *People of the State of California v. GIB dba "Brazilian Blowout*," filed November 10, 2010.
[11] Cal/OSHA Fact Sheet: "Hair Smoothing Products that May Contain or Release Formaldehyde," November 18, 2010.
[12] April 11, 2011, OSHA National News Release: "US Labor Department's OSHA issues hazard alert to hair salon owners, workers on smoothing and straightening products that could release formaldehyde;" "Hazard Alert: Hair Smoothing Products That Could Release Formaldehyde."
[13] May 16, 2011, NIOSH Interim Letter, HETA 2011-0014, p. 6.

results directly contradicted the company's claim that its products were "formaldehyde-free."

39.     Despite the mounting evidence, Defendant Brazilian Blowout continued to deny the hazards of its products.

40.     In August 2011, the FDA issued a warning letter to Defendant Brazilian Blowout, confirming that its products contained methylene glycol, a substance that releases formaldehyde when heated, in concentrations as high as 10%.[14] The FDA determined that Brazilian Blowout products were both "adulterated" and "misbranded," posing a risk to consumers when used as directed. *Id.*

41.     Defendant Brazilian Blowout disputed the FDA's findings, sending a letter to salon owners on August 24, 2011, falsely claiming:

> all OSHA and independent air-quality tests conducted on the Brazilian Blowout Professional Smoothing Solution, as well as all others in this category, have yielded results well-below even the most stringent of OSHA standards (AL, PEL, STEL).[15]

42.     In reality, OSHA's own testing showed that formaldehyde levels in salons using Brazilian Blowout products exceeded OSHA's permissible exposure limits.[16]

43.     Upon learning of Defendant Brazilian Blowout's letter to salon owners, OSHA responded calling Defendant's actions misleading and improper. "It is improper to provide misleading information or make misrepresentations regarding OSHA, or to use the

---

[14] August 22, 2011, Warning Letter to GIB, LLC dba Brazilian Blowout.
[15] August 24, 2011, letter from Brazilian Blowout to Salon Owners.
[16] Occupational Safety and Health Administration, "Hair Salons: Facts about Formaldehyde in Hair Products – Government Response"

Electronically Filed - JACKSON - KANSAS CITY - December 09, 2024 - 10:06 PM

agency's name to promote a private enterprise, product, or service."[17] OSHA directed Defendant Brazilian Blowout to retract its misleading statements and take corrective action to remove all false and misleading statements referencing OSHA from its website and to send out a retraction of its letter, clearly stating that OSHA air quality tests conducted on Brazilian Blowout yielded results above acceptable OSHA limits. *Id.*

44.     Defendant Brazilian Blowout refused to do so. Instead, it continued to publicly deny the hazards associated with its products, issuing statements that its products were "neither misbranded nor adulterated."[18]

45.     It also issued yet another public statement, reassuring customers that its products were safe and claiming that the federal agency findings were incorrect.[19]

46.     This continued campaign of deception misled consumers and completely undermined the safety warnings from health authorities.

47.     In November 2011, NIOSH released another report showing that salon workers using Brazilian Blowout products were exposed to formaldehyde at concentrations that exceeded safety limits. NIOSH's tests confirmed that Brazilian Blowout's "formaldehyde-free" products actually contained 11% formaldehyde, far above the acceptable limits for occupational safety.[20]

---

[17] September 22, 2011, OSHA letter to Michael Brady, CEO of GIB LLC dba Brazilian Blowout.
[18] September 29, 2011, letter from Defendant's attorneys to the FDA.
[19] September 29, 2011, Brazilian Blowout Letter.
[20] "Formaldehyde Exposures During Brazilian Blowout Hair Smoothing Treatment at a Hair Salon- Ohio," NIOSH Health Hazard Evaluation Report, HETA 2011-0014-3147, November 2011.

48.     In January 2012, the California Attorney General reached a settlement with Brazilian Blowout, requiring the company to stop making false claims about the safety of its products and claims that its products were formaldehyde free, and to revise its material safety data sheets and website. The settlement also mandated that Brazilian Blowout modify its labeling and provide clear warnings about the presence of formaldehyde in its products and to pay approximately $600,000 in penalties and fees.[21]

49.     Defendant Brazilian Blowout did not comply with the agreed settlement terms. As a result, in November 2012, the California Superior Court ordered the company to stop selling its Brazilian Blowout Smoothing Solution in California.[22]

50.     Defendant Brazilian Blowout also settled the class action lawsuit for $4.5 million in 2012.[23] As part of the settlement, the company again agreed to stop marketing its products as "formaldehyde-free" and to provide more detailed instructions for safe usage.

51.     In direct contradiction to the settlement agreement, in an interview with the New York Times, Michael Brady, Defendant's CEO, continued to assert its product was safe, claiming it "posed no issues for stylists or consumers as long as it was used correctly in a well-ventilated area." He further boasted that the settlement would be paid by his

---

[21] Consent Judgment Resolving the People's Claims Against Defendant GIB, LLC, *GIB, LLC* Cases, Judicial Council Coordination Proceeding No. 4657, the Superior Court of California for the County of Los Angeles, p. 6, section 4.3.
[22] November 29, 2012, Order Enforcing Consent Judgment in J.C.C.P. 4657, Superior Court of the State of California, County of Los Angeles; *see also* Press Release.
[23] "Maker of Hair Straightening Product Settles Lawsuit," March 5, 2012, *The New York Times*

11

insurance company and added "We get to sell the product forever without formulation. In my eyes, that's the acquittal we've been waiting for." *Id*. *Id*.

52.     True to these remarks, Defendant Brazilian Blowout made no changes to its product or its marketing strategy after the 2012 class action lawsuit.

53.     On August 14, 2013, the FDA sent a letter to Defendant Brazilian Blowout's attorney, stating that it continued "to have concerns related to the labeling and marketing of the Brazilian Blowout product."[24] The FDA specifically noted that "GIB LLC's existing caution statement on the label continues to be inadequate as it does not provide sufficient warning to ensure the product's safe use." *Id.*

54.     Two years later, in September 2015, the FDA issued another letter reiterating its concerns about the product's safety and labeling.[25]

55.     In 2016, FDA scientists deemed hair straighteners containing formaldehyde unsafe.[26]

56.     Despite this determination, as well as similar warnings from other agencies dating back to at least 2011, Defendant Brazilian Blowout continued to sell its hazardous products without providing adequate warnings or instructions for safe use.

---

[24] FDA August 14, 2013, letter to Thomas H. Clarke, Jr.
[25], FDA September 3, 2015, letter to Thomas H. Clarke, Jr.
[26] "The F.D.A Wanted to Ban Some Hair Straighteners. It Never Happened." *The New York Times*, October 21, 2020 ("according to internal agency emails obtained under the Freedom of Information Act by the advocacy group Environmental Working Group and shared with The New York Times. F.D.A scientists deemed hair straighteners with formaldehyde unsafe in 2016, and agency lawyers started drafting rules for a proposed ban, the emails show.").

57.     Defendant Brazilian Blowout was specifically aware that users were reporting injuries related to exposure to its product. The FDA's adverse event reports include nearly 400 pages of complaints related to formaldehyde-based products, including Brazilian Blowout. Between May 2009 and November 2010 alone, the FDA received 50 adverse event reports and reports of injuries associated with the use of Brazilian Blowout products. [27]

58.     Defendant Brazilian Blowout was aware of these reports, as the FDA routinely sent letters notifying it of the adverse events.[28]

59.     Defendant Brazilian Blowout's CEO, Mr. Brady, admitted that he personally decided to label and market Brazilian Blowout products as "Formaldehyde Free," despite never reviewing any scientific data or studies to verify the claim. Mr. Brady acknowledged that the "Formaldehyde Free" designation was intended to capitalize on its appeal as a "hot topic word" to stylists, media, and consumers, and to differentiate the product in the marketplace.

60.     Mr. Brady confirmed that he approved promotional materials, including labels, brochures, pamphlets, and website content, prominently featuring the "Formaldehyde Free" claim. He admitted that these claims were made without consulting scientific evidence or outside experts, solely to increase sales. Furthermore, Defendant's salespeople and training seminars instructed stylists to highlight this false claim as a selling point.

---

[27] March 08, 2011, Email re Brazilian Blowout.
[28] 2011 FDA Letters to Brazilian Blowout.

61.    Despite knowing that Brazilian Blowout products released formaldehyde during use, Defendant Brazilian Blowout did not disclose this hazard in its labeling, packaging, advertising, or marketing. This omission of such warnings was not accidental but instead consistent with their strategy to prioritize sales over safety.

62.    Defendant Brazilian Blowout knew its products contained hazardous chemicals capable of causing cancer and other disease, but it continued to manufacture, distribute, sell, and advertise its products without any instructions on use or warning of the health hazards posed by use.

63.    Defendant Brazilian Blowout acted with a complete indifference to or conscious disregard for the rights of others and a deliberate and flagrant disregard for the safety of others justifying the imposition of punitive damages.

64.    At all relevant times, Defendant Brazilian Blowout did business in Missouri with Defendant SSG in that it sold and shipped its products to SSG in Missouri and provided instructions and certification materials to SSG in Missouri.

65.    At all times relevant, Defendant SSG distributed, sold, advertised, marketed, and promoted Brazilian Blowout products to salons including the salons at which Plaintiffs worked.

66.    At all times relevant, Defendant SSG also provided training in the form "education" and "certification" on Brazilian Blowout products to salons and salon professionals including Plaintiff.

67.    It advertises and markets this training separate from the sale of the product. For instance, on its website, SSG states "Get Certified in Brazilian Blowout & Brazilian

14

Blowout Express! Learn how you can give your clients the hair of a lifetime while generating more revenue and spending less time behind the chair with the smoothing service asked for by name."

68.    As part of this training, Defendant SSG failed to warn users of hazards from use of these products and failed to instruct individuals on methods that could reduce exposure.

69.    Defendant SSG claims to partner with the "finest hair-care companies in the world" and represents that "every brand" it carries is of "exceptional performance and possess a genuine commitment to the salon professional."

70.    Contrary to this representation, Defendant SSG partnered with Defendant Brazilian Blowout – a company who knowingly lied to the public about the contents of its products and the hazards associated with use of its products.

71.    Considering the history cited above, Defendant SSG knew or should have known that Defendant Brazilian Blowout's products were defective in that they contained hazardous chemicals known to cause disease and were unsafe when used as directed.

72.    Despite this knowledge, Defendant SSG continued to sell Brazilian Blowout products and continued to offer Brazilian Blowout certification and training to salon professionals.

73.    Despite this knowledge, Defendant SSG failed to provide adequate warnings or instructions on safe use of the Brazilian Blowout products.

74.    As a direct result of Defendants' negligence and intentional conduct, Plaintiffs were injured and sustained damages.

15

**PLAINTIFF AMANDA GARAVAGLIA'S INJURIES AND DAMAGES**

75.     As a hairstylist, Plaintiff Amanda Garavaglia was frequently exposed to Brazilian Blowout when providing the service to clients and when other hairstylists in her vicinity provided the service.

76.     Plaintiff Amanda Garavaglia first began providing Brazilian Blowout services in 2008 when she was a resident and citizen of the state of Missouri living in Jackson County, Missouri.

77.     At the time, Plaintiff was working at a salon in Kansas who purchased the Brazilian Blowout products through Defendant SSG and directly from Brazilian Blowout.

78.     Additionally, when Plaintiff first began providing Brazilian Blowout services, she received training or instructions through SSG.

79.     Subsequently, Plaintiff moved to Kansas and has continued to work in salons in Kansas.

80.     At each salon that Plaintiff has worked from 2008 to the present, she has been exposed to Brazilian Blowout products which were purchased both from Defendant SSG and directly from Defendant Brazilian Blowout.

81.     Plaintiff Amanda Garavaglia's exposure to hazardous chemicals directly and proximately caused her injuries, contributed to cause her injuries, or aggravated pre-existing conditions including, but not limited to, infertility, uterine cancer, ovarian cancer, double mastectomy and related breast reconstructions surgeries, and impairment of the ability to function. Because of her exposure to hazardous chemicals, Plaintiff is at an

increased risk of developing cancer and other diseases which will require frequent medical monitoring for the rest of her life.

82.     As a direct and proximate result of the Defendants' actions and omissions, Plaintiff Amanda Garavaglia developed severe, permanent, and progressive damage to her health. Because of her exposure to hazardous chemicals, Plaintiff has suffered, and will continue to suffer physical pain, scars and disfigurement, loss of the enjoyment of life, mental and emotional distress, embarrassment, loss of sleep and natural rest, increased risk of and fear of developing cancer and other adverse health consequences.

83.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff Amanda Garavaglia has suffered and will suffer lost wages, and/or earning capacity, and has expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

84.     Plaintiff Amanda Garavaglia further claims punitive damages including, but not limited to, the wanton, willful, callous, reckless, and depraved conduct of Defendants which entitle Plaintiff to punitive damages to punish the Defendants and to deter future wrongdoing in that the acts and omissions of Defendants have manifested such a deliberate and flagrant disregard for the safety of others and a reckless and complete indifference to and conscious disregard for the safety of others.

85.     Plaintiff John Garavaglia is the husband of Amanda Garavaglia. He claims damages from the Defendants on the theory of Loss of Consortium, as to fairly compensate him for the reasonable value of any loss of the services, aid, assistance, society,

Electronically Filed - JACKSON - KANSAS CITY - December 09, 2024 - 10:06 PM

companionship, and marriage relationship of his wife proximately caused by the fault of Defendants.

## **PLAINTIFF M.M.'S INJURIES**

86.  Plaintiff M.M.'s natural mother, Megan Matson, was a hairstylist while pregnant with Plaintiff M.M. in 2014.

87.  As a hairstylist, Megan Matson was frequently exposed to Brazilian Blowout when providing the service to clients and when other hairstylists in her vicinity provided the service.

88.  Additionally, when Megan Matson first began providing Brazilian Blowout services, she received training or instructions through SSG.

89.  During this training, SSG never informed Megan Matson that being exposed to Brazilian Blowout could be harmful to Plaintiff M.M or methods which would reduce her exposure.

90.  While Megan Matson was pregnant, Plaintiff M.M. was exposed to Brazilian Blowout products which were purchased both from Defendant SSG and directly from Defendant Brazilian Blowout.

91.  Plaintiff M.M.'s exposure to hazardous chemicals directly and proximately caused her injuries, contributed to cause her injuries, or aggravated pre-existing conditions including, but not limited to, childhood acute lymphoblastic leukemia and impairment of the ability to function. Because of her exposure to hazardous chemicals, Plaintiff is at an increased risk of developing cancer and other diseases which will require frequent medical monitoring for the rest of her life.

18

92.   As a direct and proximate result of the Defendants' actions and omissions, M.M. developed severe, permanent, and progressive damage to her health. Because of her exposure to hazardous chemicals, Plaintiff has suffered, and will continue to suffer physical pain and injuries, loss of the enjoyment of life, mental and emotional distress, embarrassment, loss of sleep and natural rest, increased risk of and fear of developing cancer and other adverse health consequences.

93.   As a direct and proximate result of Defendants' actions and omissions, Plaintiffs have suffered economic losses in the form of lost wages and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

94.   Plaintiffs further claim punitive damages including, but not limited to, the deliberate, flagrant, wanton, willful, callous, reckless, and depraved conduct of Defendants which entitle Plaintiffs to punitive damages to punish the Defendants and to deter future wrongdoing in that the acts and omissions of Defendants have manifested such a deliberate and flagrant disregard for the safety of others and a reckless and complete indifference to and conscious disregard for the safety of others.

**COUNT 1.**
**NEGLIGENCE**
**(Plaintiffs v. all Defendants)**

95.   Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

96.   Defendant Brazilian Blowout manufactured, designed, sold, supplied, and provided training on its Brazilian Blowout products.

19

97.     Defendant Brazilian Blowout owed a duty to users of its products, including

Plaintiffs, to properly design, manufacture, test, warn and instruct regarding its products.

98.     Defendant Brazilian Blowout acting by and through its agents and employees

failed to use due care under the circumstances and was thereby negligent in the

performance of its duties in the following respects, among others:

    a.  failed to use ordinary care to manufacture or design its Brazilian Blowout
products to be reasonably safe;

    b.  failed to properly test the Brazilian Blowout products;

    c.  failed to recall and/or remove from the stream of commerce the Brazilian
Blowout products despite knowledge of the unsafe and dangerous nature
of such products;

    d.  failed to disclose that its products contained formaldehyde;

    e.  falsely represented that its products were "formaldehyde free,"
"contain[ed] no formaldehyde," "contain[ed] no harsh chemicals," and
were "100% salon safe;

    f.  failed to adequately disclose or warn of any hazards associated with use
of the Brazilian Blowout products;

    g.  failed to provide adequate warnings, training or instruction regarding the
safe use of the Brazilian Blowout products;

    h.  failed to provide adequate instructions or warnings regarding the need for
personal protective equipment or other industrial hygiene controls;

    i.  ignored warnings and testing demonstrating that users of its products
were exposed to hazardous chemicals in an amount sufficient to cause
disease;

    j.  failed to disclose and intentionally misrepresented the contents of its
Brazilian Blowout products;

    k.  in other ways to be discovered.

99.     Defendant SSG sold, distributed, supplied, and provided training, instructions, and certification on Brazilian Blowout products to salons and salon professionals including Plaintiffs.

100.    Defendant SSG owed a duty to purchasers and users of the products it sold, including Plaintiffs, to sell safe products and to properly warn and instruct regarding these products.

101.    Defendant SSG acting by and through its agents and employees failed to use due care under the circumstances and was thereby negligent in the performance of its duties in the following respects, among others:

    a.  failed to use ordinary care to sell products that were reasonably safe for use;

    b.  failed to recall and/or remove from the stream of commerce the Brazilian Blowout products despite knowledge of the unsafe and dangerous nature of such products;

    c.  failed to disclose that Brazilian Blowout products contained formaldehyde;

    d.  failed to adequately disclose or warn of any hazards associated with use of the Brazilian Blowout products;

    e.  failed to provide adequate warnings, training or instruction regarding the safe use of the Brazilian Blowout products;

    f.  failed to provide adequate instructions or warnings regarding the need for personal protective equipment or other industrial hygiene controls;

    g.  ignored warnings and testing demonstrating that users of Brazilian Blowout products were exposed to hazardous chemicals in an amount sufficient to cause disease;

    h.  failed to disclose the contents of the Brazilian Blowout products;

    i.  in other ways to be discovered.

102. As a direct and proximate result of one or more of Defendants' acts or omissions, Plaintiffs were injured and suffered damages.

103. The conduct of Defendants as alleged herein was deliberate, flagrant, willful, wanton and/or in reckless disregard for the rights of Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment against Defendants for actual damages sustained as a result of the injury to Plaintiffs and for an award of punitive damages; together with interest and costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT 2.
### NEGLIGENCE TRAINING AND INSTRUCTION
### (Plaintiffs v. Defendant SSG)

104. Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

105. Defendant SSG provided training, instructions, and certification on Brazilian Blowout products to salons and salon professionals including Plaintiffs.

106. Defendant SSG owed a duty to individuals it instructed and provided certifications to, including Plaintiffs, to properly train, instruct, and warn of the hazards, contents, and proper use of the products.

107. Defendant SSG acting by and through its agents and employees failed to use due care under the circumstances and was thereby negligent in the performance of its duties in the following respects, among others:

    a. failed to provide adequate warnings, training, and instructions regarding the safe use of the Brazilian Blowout products;

22

Electronically Filed - JACKSON - KANSAS CITY - December 09, 2024 - 10:06 PM

b. failed to provide adequate instructions or warnings regarding the need for personal protective equipment, proper ventilation or other industrial hygiene controls;

c. ignored warnings and testing demonstrating that users of Brazilian Blowout products were exposed to hazardous chemicals in an amount sufficient to cause disease;

d. failed to disclose the contents of the Brazilian Blowout products including that it contained formaldehyde; and

e. in other ways to be discovered.

108.   As a direct and proximate result of one or more of Defendant's acts or omissions, Plaintiffs were injured and suffered damages.

109.   The conduct of Defendant as alleged herein was deliberate, flagrant, willful, wanton and/or in reckless disregard for the rights of Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment against Defendant for actual damages sustained as a result of the injury to Plaintiffs and for an award of punitive damages; together with interest and costs of this action, and for such further relief as the Court deems fair and reasonable.

**COUNT 3.**
**STRICT LIABILITY – DESIGN DEFECT**
**(Plaintiffs v. All Defendants)**

110.   Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

111.   Defendant Brazilian Blowout and Defendant SSG manufactured, designed, sold, or supplied the Brazilian Blowout products in the ordinary course of their business.

112. At the time of the Brazilian Blowout products design, manufacture, distribution, or sale, they were in a defective condition and unreasonably dangerous when put to Defendants' anticipated use.

113. The Brazilian Blowout products were defectively designed in that they:

   a. contained hazardous chemicals known to cause disease;

   b. required the use of heat which released hazardous chemicals including formaldehyde into the air;

   c. failed to provide any or adequate warnings of the hazards;

   d. failed to provide adequate instructions concerning proper procedures and safe use.

114. At the time of Plaintiffs' injuries, the Brazilian Blowout products were used in a manner reasonably anticipated by Defendants.

115. The dangerous and defective condition of the Brazilian Blowout's products and the failure to warn of the dangers thereof caused or contributed to cause Plaintiffs to sustain injuries and damages as alleged herein.

WHEREFORE, Plaintiffs pray judgment against Defendants for actual damages sustained as a result of the injury to Plaintiffs and for an award of punitive damages; together with interest and costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT 4.
### STRICT LIABILITY – FAILURE TO WARN
### (Plaintiffs v. All Defendants)

116. Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

24

117.    Defendant Brazilian Blowout and Defendant SSG manufactured, designed, sold, supplied, or provided training on the Brazilian Blowout products in the ordinary course of their business.

118.    At the time of the Brazilian Blowout products design, manufacture, distribution, or sale, they were unreasonably dangerous when put to Defendants' reasonably anticipated use without knowledge of its characteristics.

119.    Defendants did not give adequate instructions on safe use or warn of the defective nature of the products.

120.    At the time of Plaintiffs' injuries, the Brazilian Blowout products were used in a manner reasonably anticipated by Defendants.

121.    As a result of Defendants' failure to adequately instruct and warn of the dangerous characteristics of the Brazilian Blowout products, said products were defective and unreasonably dangerous when put to the use reasonably anticipated by Defendants.

122.    The dangerous and defective condition of the Brazilian Blowout's products and the failure to warn of the dangers thereof caused or contributed to cause Plaintiffs to sustain injuries and damages as alleged herein.

WHEREFORE, Plaintiffs pray judgment against Defendants for actual damages sustained as a result of the injury to Plaintiffs and for an award of punitive damages; together with interest and costs of this action, and for such further relief as the Court deems fair and reasonable.

## COUNT 5.
### Fraudulent Concealment/Misrepresentation
### (Plaintiffs v. All Defendants)

123.    Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

124.    Defendant Brazilian Blowout and Defendant SSG knew or should have known that the Brazilian Blowout products contained hazardous chemicals including formaldehyde and that exposure to these products could cause adverse health effects.

125.    Even though Defendants knew that the Brazilian Blowout products contained harmful chemicals and that exposure to these products could cause adverse health effects, Defendants intentionally and maliciously chose to represent that the products were formaldehyde free, concealed the true nature of the products, and concealed that the products could cause disease.

126.    The information that Defendants concealed and/or misrepresented regarding the nature of the Brazilian Blowout products and/or whether exposure to these products presented health risks created a false sense of security and was material to Plaintiffs' conduct including, but not limited to, using the Brazilian Blowout products and being in the vicinity of others who were using the products.

127.    Defendants had a duty to disclose such information to Plaintiffs for reasons including:

    a.   Defendants possessed knowledge regarding the nature of the Brazilian Blowout products and their potential to cause adverse health effects that was superior to Plaintiffs' knowledge;

    b.  Defendants had a relationship of trust and/or confidence with Plaintiffs;

    c.  Defendants had a relationship based on past experience with Plaintiffs; and

    d.  other attendant circumstances.

128.   Plaintiffs reasonably and detrimentally relied on Defendants' fraudulent concealment/misrepresentation by not acting to protect themselves from the dangers associated with exposure to the Brazilian Blowout products and was reasonably justified in not acting and could not have discovered and/or were prevented from discovering the truth because Defendants created a false sense of security with their concealment/misrepresentations.

129.   Defendants profited from the fraud in that by representing the Brazilian Blowout products were safe for use, hairstylists like Plaintiffs continued to purchase and use the products.

130.   Defendants knew or should have known of material facts regarding the hazardous nature of the Brazilian Blowout products and the health hazards caused by exposure to such products.

131.  As a direct and proximate result of Defendants' concealment/misrepresentation, Plaintiffs were injured and suffered damages.

WHEREFORE, Plaintiffs prays judgment against Defendants for actual damages sustained as a result of the injury to Plaintiffs and for an award of punitive damages; together with interest and costs of this action, and for such further relief as the Court deems fair and reasonable.

Electronically Filed - JACKSON - KANSAS CITY - December 09, 2024 - 10:06 PM

**COUNT 6.**
**Breach of Implied Warranty of Merchantability or Fitness for Particular Purpose**
**(Plaintiffs v. All Defendants)**

132.   Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

133.   Defendant Brazilian Blowout and Defendant SSG sold the Brazilian Blowout products.

134.   As a salon professional, Plaintiffs were users and purchasers of Brazilian Blowout products.

135.   Defendants should have reasonably expected that such a person would use or be affected by the Brazilian Blowout products.

136.   When Defendants sold the Brazilian Blowout products, the products were not fit for one of its ordinary purposes.

137.   Plaintiffs used the Brazilian Blowout products for such a purpose.

138.   Within a reasonable time after Plaintiffs knew or should have known the product was not fit for such purpose, Plaintiffs gave Defendants notice thereof.

139.   As a direct result of such Brazilian Blowout products being unfit for such purpose, Plaintiffs were damaged.

WHEREFORE, Plaintiffs prays judgment against Defendants for actual damages sustained as a result of the injury to Plaintiffs and for an award of punitive damages; together with interest and costs of this action, and for such further relief as the Court deems fair and reasonable.

Electronically Filed - JACKSON - KANSAS CITY - December 09, 2024 - 10:06 PM

## COUNT 7.
### Breach of Express Warranty
### (Plaintiffs v. All Defendants)

140.    Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

141.    Defendant Brazilian Blowout and Defendant SSG sold Brazilian Blowout products.

142.    As a salon professional, Plaintiffs were users and purchasers of Brazilian Blowout products.

143.    Defendants should have reasonably expected that such a person would use or be affected by the Brazilian Blowout products.

144.    Defendants expressly warranted and represented to purchasers and foreseeable users that the Brazilian Blowout products was reasonably safe and fit for their ordinary and foreseeable purpose and that the training and instructions provided were adequate.

145.    Defendants made these representations with knowledge or intent that purchasers and foreseeable users would rely upon such representations.

146.    The Brazilian Blowout products did not conform to these representations.

147.    Within a reasonable time after Plaintiffs knew or should have known the product was not fit for such purpose, Plaintiffs gave Defendants notice thereof.

148.    As a direct result of such failure to conform, Plaintiffs were damaged.

WHEREFORE, Plaintiffs pray judgment against Defendants for actual damages sustained as a result of the injury to Plaintiffs and for an award of punitive damages;

together with interest and costs of this action, and for such further relief as the Court deems fair and reasonable.

<h2 style="text-align:center"><u>COUNT 8.</u><br>LOSS OF CONSORTIUM<br>(Plaintiff John Garavaglia v. All Defendants)</h2>

149.    Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

150.    As a direct and proximate result of the carelessness, negligence, and recklessness of Defendant and of the aforesaid injuries to his spouse, Plaintiff have been damaged as follows:

  a. He has been and will continue to be deprived of the services, support, maintenance, guidance, companionship and comfort of his spouse;

  b. He has been and will continue to be required to spend money for medical care and household care for the treatment of his spouse; and

  c. He has been and will continue to be deprived of the earnings of his spouse.

WHEREFORE Plaintiff prays judgment against Defendants for actual damages sustained as a result of the injury to Plaintiff, for an award of punitive damages; together with interest and costs of this action, and for such further relief as the Court deems fair and reasonable.

<h2 style="text-align:center"><u>JURY TRIAL DEMAND</u></h2>

151.    Plaintiffs hereby request a trial by jury.

Respectfully submitted,

/s/ Lauren E. McClain
HUMPHREY, FARRINGTON  & McCLAIN, P.C.
KENNETH B. McCLAIN          #32430
TIMOTHY J. KINGSBURY          #64958
LAUREN E. McCLAIN          #65016
ANDREW K. SMITH          #60485
221 W. Lexington, Suite 400
Independence, Missouri 64050
Telephone:      (816) 836-5050
Facsimile:      (816) 836-8966
kbm@hfmlegal.com
tjk@hfmlegal.com
lem@hfmlegal.com
aks@hfmlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, I electronically served the foregoing via email to all attorneys of record.

*/s/ Lauren E. McClain*
Attorney for Plaintiffs